No. 11.—MACON & WESTERN RAILROAD, plaintiffs in error, *vs.* JAMES M. DAVIS, administrator of WILLIS BOON, defendant.

[1.] The arbitrators to be appointed under the Act of 1847, to assess and award damages against Railroad Companies, for injuries done to property, are a Court with limited jurisdiction, and the record of the proceeding under the Act, must show all that the Act requires to give the jurisdiction, and if it does not, the proceeding is *coram non judice* and void.

[2.] It should show that the proceedings took place at the depot of the company in that Magistrate's district, on the line of the road, in the direction the train was moving when the injury occurred, nearest to the point where the injury did occur; that the Magistrate who appoints the arbitrator, was a Magistrate of that district; that the arbitrators are free-holders of that district, and that the agent of the Company did not attend at the depot in that district, to hear complaint, as directed by the Statute.

[3.] When the agent fails so to attend, and arbitrators are then appointed, and proceed to make an award, it is not necessary that the Company shall have notice of their proceedings.

[4.] So much of the Act of 1847, as relates to proceedings by suit on the award against the Company, *held* to be repealed by the Act of 1850.

[5.] *Held*, that the words "or other property" in the Act of 1847, include slaves.

[6.] *Held*, that so much of the Act of 1847, prescribing the liabilities of Railroad Companies, as is unrepealed by the Act of 1850, amendatory thereto, is not unconstitutional.

[7.] Certain propositions stated in relation to Railroad charters, and the amenability of corporations to legislation.

[8.] The obligation and duty of the Judiciary in relation to unconstitutional legislation declared.

[9.] The Act of 1850 gives to the Railroads on the appeal, all the rights in defence, which in like cases, belong to a citizen on the trial of an appeal.

[10.] The Act of 1847, which provides that Railroads shall be liable in law for injuries done to property in running their cars and locomotives: *Held*, to be only declaratory of the Common Law rule of liability in such cases. They are bound to ordinary care and diligence, and liable for gross neglect. In such cases, the plaintiff cannot recover, if the injury complained of is with his consent, or caused by his negligence. If both plaintiff and defendant are in default, the plaintiff cannot recover, unless the injury was intentional on the part of the defendant, or unless it is impossible with ordinary care and diligence for him to avoid the consequences of de-

fendant's neglect. Individuals are in like manner liable to corporations for injuries done to their property by the negligent use of their own.

Award, in Bibb Superior Court. Tried before Judge Pow-ERS. November Term, 1852.

On the 14th day of December, 1851, a negro boy was kill-ed, and a carriage destroyed, property belonging to the estate of Willis Boon, by a train of cars running on the Macon & Western Railroad, in the County of Monroe. James M. Da-vis, as administrator of said estate, filed his petition, under the Acts of 1847 and 1850, before D. E. Haiston, a Justice of the Peace for the 480th district G. M. and town of Forsyth, praying for the appointment of arbitrators, to award the dama-ges done to said estate, by the destruction of said property.

John H. Thomas, Allen Cochran and Jonathan Johnson, were appointed arbitrators, who on the 3d day of April, 1852, rendered an award of $1,050, as damages, against said Rail-road Company. From this award, the Conpany entered an appeal to the Superior Court of Bibb County, which came on to be tried at the November Term, 1852. On the trial, plain-tiff offered in evidence, a record from the County of Monroe, containing the petition of Davis, and the affidavit thereto at-tached, the order of D. E. Haiston appointing the arbitra-tors, the award of the arbitrators, and the certificates of Haiston and Willis Carry, Clerk of the Superior Court of Mon-roe County.

To the introduction of this testimony, counsel for the Com-pany objected, upon the following grounds :

1st. Because the Act and amended Act, under which said proceedings were had, were unconstitutional and void.

2d. Because the record does not show that the arbitrators resided in the district where the proceedings were had, and were freeholders.

3d. Because it does not appear by the record, that the no-tice required by the Act to be filed with the Clerk of the Su-perior Court, had not been filed.

4th. Because the record does not show that an agent of the

Company did not attend at their depot, as required by the Statute.

5th. Because the record does not show that the depot at Forsyth, was the depot to which the cars were going when the alleged injury happened.

6th. Because the Statute under which this proceeding was had, does not give this summary remedy for injuries done to negro property.

7th. Because the record does not show that the plaintiff has complied with all the requirements of the Statute.

8th. Because the defendants had no notice of said proceedings.

All of which objections were overruled by the Court, and the evidence admitted, and counsel for defendant excepted.

Counsel for the defendant then proposed to prove by the evidence of John Snaw, taken by interrogatories, that there was no carelessness or negligence on the part of the defendant, and that the injury done to the property of the plaintiff's intestate, was the result of his own negligence.

Counsel for plaintiff objected to the evidence.

The Court sustained the objection, and ruled out the evidence, deciding "that the award was conclusive upon the defendant, as to every thing, except the amount of damage sustained by the plaintiff."

To which decision counsel for defendant excepted, and upon these exceptions have assigned error.

The following are the sections of the Act of 1847, under which the proceedings were instituted:

SEC. I. Be it enacted, that the several Railroad Companies of this State shall be held liable in law for any damage done to live stock or other property (to the owner or owners thereof) by the running of the cars or locomotives of said Companies on their roads respectively.

SEC. II. For the better ascertainment and settlement of such damage hereafter, it shall be the duty of each of said Companies to appoint an agent or agents to attend at the depot of

the Company on each Justice's Court day, to hear any complaint for damages as aforesaid, he putting a notice in writing at the district Court house door of his attendance and readiness to do so, by or before mid-day; and in case of disagreement between such agent and the complainant, either as to the fact of such damage being done, or the amount of the same, they may each choose one disinterested freeholder of the district, which two shall choose a third, who, after being sworn before a Judge or Justice of the Peace, truly and impartially to estimate the damages in the case submitted to them, shall estimate and assess such damages, and give their award in writing; and upon the presentation of such award by the person so aggrieved, his agent or attorney, to such agent of the Company, or the president or cashier of any such Company, and a refusal to pay the amount of the same to the person so presenting it, or his order, such person so damaged or aggrieved, may commence his suit against such company, in the proper County and Court, for the damages aforesaid, and upon the trial of such suit, the written award shall be conclusive of such damages aforesaid, and read as evidence in said case; and upon the trial of the case (which shall be at the first term of the Court) the Jury shall find for the plaintiff the amount of the damage to the property, the Rail-road fare to the Court and back, and such damage for time and trouble, not less than fifty per cent. on the damage for the property, as to them may seem reasonable and just: Provided, if the Railroad agent does not attend and select a freeholder as before provided, then one of the Justices of the Peace shall select one freeholder, the complainant one, and they two, one other, which three shall assess the damage and award as aforesaid.

SEC. III. The Company shall notify the Magistrate of the district and the Clerk of the Superior Court of the County, of the appointment of such agent as is before provided for, and such Clerk shall record the notice served on him, and receive one dime for recording the same.

SEC. IV. The engineer shall render to the agent at each depot, an account of all the stock or other property damaged

Macon & Western Railroad *vs.* Davis, administrator.

between that and the last depot, which account the agent shall enter in a book to be kept for that purpose by him, which book shall be at all times open to any person wishing to inspect the same.

SEC. V. Provides that the engineer before entering on his duties, shall be sworn to render a true account to the agent at the depot of all property damaged, and that any Company employing an engineer without being sworn, shall forfeit $5 per mile to any land owner, through whose lands the cars may run, for each and every trip.

SEC. VI. Requires the complainant to swear that he has sustained damage without fraud or combination directly or indirectly on his part, and that this affidavit shall be attached to the award before it can be read in evidence.

SEC. VII. Provides for damages against the complainant, if on the trial it shall appear to the Jury, that he practised or attempted to practise fraud on the Company in relation to the property damaged.

The following is the Act of 1850, amending the Act of 1847:

SEC. I. *Be it enacted,* That in all cases where an award shall be made in conformity with the provisions of the second section of said Act, the same shall be filed in the Clerk's office of the Superior Court of the County in which the principal officer of the Railroad Company may be; and it shall be the duty of such Clerk to make out and serve a copy thereof on the President of said Company, or by leaving it at said Company's office, within ten days after the filing of said award; and within twenty days after such service, the Clerk shall issue execution for the amount of said award, and the costs attending said filing, copy and service against said Company, unless the said Company by one of its officers or its attorney, shall enter an appeal in the usual manner, on paying costs and giving security; in which case said claim for damages shall stand for trial before the special Jury at the first term after such appeal, upon the same terms, restrictions and liabilities as apply to and govern other appeal cases, and judgment and execution shall be rendered and issued accordingly.

C. B. COLE, for plaintiffs in error.

S. T. BAILEY, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

The proceedings out of which spring the questions for review in this record, were taken under the Acts of 1847 and 1850. A copy of the Act of 1850, and so much of the Act of 1847, as applies to the case, are given in the Reporter's brief. See *Cobb's N. D.* 397, 398, 399.

It will be seen by reference to the Act of 1847, that the Legislature has provided therein a summary mode of procedure, and an extraordinary tribunal, clothed with special jurisdiction; for the purpose, in the first instance, of ascertaining the damage done to live stock or other property, by the running of the cars and locomotives of the Railroad Companies of this State. For the better ascertainment and settlement of such damages, it enacts that it shall be the duty of each of said Companies to appoint an agent or agents, to attend at the depot of the Company on each Justices' Court day, to hear any complaint for damages done to live stock or other property by the running of the cars and locomotives; that the agent shall put a notice in writing at the district Court house door of his attendance and readiness to hear such complaint, by or before mid-day of the day on which the Justices' Court of the district is held; that the Company shall notify the Magistrate of the district, and the Clerk of the Superior Court of the County of the appointment of their agent, which notice the Clerk is required to record; that the engineer of the Company shall render to the agent at each depot, an account of all the stock or other property damaged between that and the last depot, and that the agent shall enter in a book kept for that purpose the account so rendered, which shall be at all times open to the inspection of all persons; that the engineer shall be sworn before entering on his duties, to render a true account of the stock or other property damaged as above stated, and that

VOL. XIII 10

any person complaining of damage done to his stock or other property by the running of the cars or engines, shall take and subscribe an oath that he has sustained damages without any fraud or combination on his or her part, directly or indirectly, and that this affidavit shall be attached to the award before it can be read as evidence.    These things being done, the Legislature seems to have supposed that the agent of the Company and the person complaining might come together at the depot of the Company, on the day of the holding of the Justices' Court for the district in which it is situated, and then and there agree between themselves as to the fact of damage, and the amount of the compensation to be paid ; for without directing this to be done, the Act proceeds to declare, that in case of disagreement between the agent and the complainant, either as to the fact of such damage being done, or the amount of the same, they may each choose one disinterested freeholder of the district, which two shall choose a third, who after being sworn before a Judge or Justice of the Peace, truly and impartially to estimate the damages in the case submitted to them, shall estimate and assess such damages, and give their award in writing.    And in the event that the agent of the Railroad does not attend and select a freeholder as before provided, the Act makes it the duty of one of the Justices of the Peace to select one freeholder, the complainant one, and these two one other, who shall assess the damage and make an award between the parties.    Such are the requirements of the Act, from which it is clear that the Legislature intends, first, that the agent of the Railroad and the person claiming to have been injured, shall, if possible, agree upon the fact of the injury to or destruction of the property, and the amount of the damages, and if they do so agree, that then the agreement shall be a binding contract between the parties, and the procedure under the Statute shall there terminate ; and second, that if they do not so agree, then the fact and amount of the damage, shall be submitted to arbitrators, each choosing one, and the two a third ; and third, that if the agent of the Railroad does not attend for the foregoing purposes at all, then

the fact of damage and the amount of the same, shall at the instance of the person alleging the injury, still be submitted to arbitration; a Justice of the Peace choosing one arbitrator, the complainant one, and the two a third.

The proceeding in this case, originated under the third condition of things contemplated in the Statute. An award was made by arbitrators, one selected by a Justice of the Peace, one by the complainant, and the third by these two. It was against the Railroad, and upon it an appeal was taken under the Statute to the Superior Court. Upon the trial of that appeal, the administrator of Willis Boon, who was the complainant before the arbitrators, tendered in evidence the record of the proceeding before them, and their award, which were objected to upon several grounds, and admitted by the presiding Judge. The overruling of these objections is the first error which is charged upon the Court below. We consider them now, so far as they go to the regularity of the proceeding under the Act of 1847.

[1.] It makes the arbitrators a tribunal for the ascertainment and award of damages against the Railroads, for injuries to, or the destruction of live stock or other property. They are clothed with jurisdiction over that subject-matter, and over these great corporations, in which numerous citizens have a specific property interest, and in which the whole people have a very important general interest. Whilst Railroads in the hands of private corporations, belong to individuals, yet it is not a controvertible proposition, that they subserve many most valuable public uses. It is upon this idea alone that the property of the citizen can be appropriated, even when adequate compensation is awarded for their construction. By the Act of 1847, a commission of three freeholders is empowered to render a judgment against them. It is not the less a judgment because called an award. Nor is it the less a judgment because not necessarily final. An appeal by the Act of 1850, is given to the Companies. To appeal to the Superior Court is their privilege, which they may exercise or not, ac-

cording to their own judgment of a loss or gain thereby; and if they determine that it is not their interest to appeal, then by the express enactment of the Legislature, the judgment of the arbitrators becomes final, and may be enforced by process of execution. The action of this tribunal is altogether one side of the course of the Common Law. They are authorized to give judgment without the pleadings usual in such cases by the rules of the Common Law—without notice, except by implication, to the Railroad—without the intervention of a Jury, and whether bound by the rules of evidence obligatory upon the Courts of Law or Chancery, is left undetermined. They derive their being and the forms of their existence from the Statute. They are a special Court, with a limited, specific, but potent jurisdiction; a Court which could not for one moment be upheld but for the fact, that from its judgment an appeal lies to a Jury. Being then a Court of limited jurisdiction, to it, if to any Court any where to be found in countries under the sway of the Common Law, the rule applies, that Courts of limited jurisdiction must not only act within the scope of their jurisdiction, but it must appear on the face of their proceedings, that they have so acted, or their proceedings are "*coram non judice*" and void. Void every where and howsoever attacked. 7 *Geo. R.* 362. 9 *Wheat. R.* 541. 4 *Johns. R.* 291. 1 *Term R.* 151. 1 *Saund. R.* 74. 2 *Peters*, 157. 5 *Cranch*, 172. 8 *Mass.* 86. 3 *Verm.* 114. 10 *Conn.* 514. 3 *Yerg.* 355. 9 *Cow.* 227. 1 *Baily*, 459. 2 *Baily*, 267. 5 *Har. & J.* 36.

[2.] The objections to this record, are predicated upon this rule. They assert that it does not show the jurisdiction of the Magistrate who appointed one of the arbitrators, to make such appointment, and does not exhibit the jurisdiction of the arbitrators to make the award. The objections (and rightfully) go upon the assumption, that the jurisdiction must be exercised according to the requirements of the Statute, else it is wrongfully exercised, and the whole proceeding *coram non judice*. In strictness, the judgment itself should recite everything necessary to give the jurisdiction. That contains nothing but the

State and County, a recital of the facts that the arbitrators had been chosen upon the petition of J. M. Davis, administrator of Willis Boon, to assess damages for the killing of a negro man named June, about 38 or 40 years old, and destroying a rockaway carriage, by the Macon and Western Railroad engine and cars, in the County of Monroe, on the 14th December, 1851, and the award of $800 for the killing of the man June, and $250 for the carriage. It is dated 3d April, 1852, and signed by the arbitrators. We are disposed, however, to adopt a more liberal rule, and to consider the whole record of the proceedings as part and parcel of the record of the judgment. The first objection is, that it does not appear that the arbitrators were freeholders. The Statute requires them to be freeholders. The petition of the complainant asks for the appointment of freeholders, and the certificate of the Magistrate declares, that certain persons, naming them, were appointed arbitrators upon that petition. This we hold sufficient as to the single fact that the arbitrators were freeholders. The next objection I notice, which is the 6th in the order in which they stand in the bill, is, that the record does not show that the depot at Forsyth, in Monroe County, where the proceedings were had, was the depot nearest on the line of the road to the point where the injury was done, in the direction the train was running at the time. This objection we think well sustained. From a careful observation of the Act of 1847, it is manifest, that the proceedings must take place, and the jurisdiction of the Magistrate in appointing an arbitrator, and of the arbitrators in making the award, must be exercised in that Magistrate's district, on the line of the road, in the direction the train is running at the time when the injury is done, nearest to the point on the road where the injury was done, and in which the Company have a depot, and at that depot. This is not, it is true, expressly declared in the Act, but it is a conclusion which is irresistible from a fair and natural interpretation of its provisions. It provides that for the ascertainment and settlement of damages done to property, the Company shall appoint an agent or agents, to attend at the depot

of the Company on each Justices' Court day, to hear any complaint for damages.    The obligation as to agents, imposed upon the Company, is to have an agent at each of its depots, and on each Justices' Court day, to hear complaint, &c.    The place is the depot, and the time, the Magistrate's Court day, of the district in which the depot is situated.    The law seems to go upon the supposition, that the locality of the depot and the place of holding the Court, are the same.    If this be not so in a given case, no burden is thereby cast upon the Company, for the Act requires the attendance of the agent at the depot.    Farther, the Act requires the engineer to render to the agent at each depot an account of all the stock or other property damaged between that and the last depot.    This account, the agent is required to enter in a book to be kept by him, for the inspection of all persons interested.    All this machinery is with a view to the hearing of complaints; that is, to determine the manner and place of exercising the jurisdiction contemplated in either of the condition of things before adverted to.    Now, it is a clear inference from the fact that an agent is required to be at each depot, to receive the report of the engineer—from the fact that the engineer is required to report to him the damage done to property, by the running of the train between every depot which he reaches, and the last depot passed—from the fact that a record of the damages done, is required to be kept at the depot to which the engineer is required to report, it being the first reached by him after the injury done; that there and no where else is the seat, territorially, of the jurisdiction.    There is good reason for this.    It is surely enough, that the roads are subjected to a jurisdiction not only summary, but in the mode of its action most favorable to the complainant, without subjecting them to be called to account at any depot on their road, which may suit the convenience or gratify the caprice of the complainant—at Atlanta for example, for an injury to property occuring near to Macon.    The record does not in fact show that the proceedings took place at the depot, at which I have thus shown, they alone could be had.    It shows that they took place at Forsyth,

in Monroe County, but where the alleged damage to the complainant's property occurred, or whether the depot at Forsyth, was the next nearest in the direction the train was running, to the point where the injury happened, does not appear. For these defects, the whole proceeding was void, and of course inadmissible to prove anything. Our ruling on this exception, draws after it several others. It was objected, that the record does not show that the arbitrators were freeholders of the district in which the award was made. It is true, it does not even do that. The law declares that they shall be freeholders of the district, that is, of the district wherein, as we have seen, the jurisdiction resides. No freeholders of any other district have authority to act. The record should exhibit the fact, that the arbitrators were freeholders of that district, in which was located a depot of the Company nearest to the point where the injury to the property was done, in the direction in which the train was moving. And further, it should show that the Magistrate who made the appointment of the arbitrator, was a Magistrate of that district. Not showing these things, the award was *coram non judice* and void. And it is equally void, because the record does not show that an agent of the Company did not attend at that depot to hear the complaint. The authority to appoint an arbitrator, is devolved on the Magistrate, only when the agent fails to attend to hear the complaint. Now, this record does state that no agent attended at the depot at Forsyth, but *non constat*, that he did not attend at the only depot where the award could be rightfully made. These are all and each defects in the record which go to a denial of the jurisdiction, and are fatal to the complainant's case.

[3.] It was farther objected, that the record does not show that the Company had notice of the proceedings. The Statute requires no such notice. Nor can the Company justly complain of this ; because the award is made in the absence of the agent of the Company, only in the event of his failing to attend and hear the complaint himself. In a case, then, where it is heard, in the absence of the Company, it comes to be so heard by the laches of the Company, through its agent.

[4.] Again, it was objected to this record, that the property injured was in part a slave, and the Act not contemplating negro property, the award is void. The 1st section of the Act of 1847, makes the Railroads liable for any damage done to live stock, or *other property,* by the running of the cars, &c. It is argued, and with some plausibility, that the Legislature did not mean to place, as to this liability, property of the dignity and importance of slaves, who are reasoning and willing agents, upon the same footing with live stock, such as horses, cattle, or hogs; and that the words, *or other property,* are intended to include other property of the same grade and value with live stock. The words, however, embrace *all* property, and of course include slaves. We do not feel at liberty to construe the Act against the plain meaning of its terms.

[5.] It was objected to this entire record, that the Act of 1847, under which the award was made, is unconstitutional. If it is, then follows the conclusion that this whole proceeding is a nullity. The learned counsel making the objection, founded it mainly upon that part of the Act which prescribes the proceedings against the Railroads subsequent to the award; seeming to acquiesce in the assumption on the other side, that that part of the Act was not repealed, but amended only, by the Act of 1850.

[6.] The Act of '47, after directing that the arbitrators shall be sworn truly and impartially to estimate the damages in the case submitted to them, proceeds to say that they "shall estimate and assess such damages in writing, and upon the presentation of such award by the person so aggrieved, his agent or attorney, to such agent of the Company, or the President or Cashier of any such Company, and a refusal to pay the amount of the same to the person so presenting it, or his order, such person so damaged or aggrieved may commence his suit against such company, in the proper County and Court, for the damages aforesaid; and upon the trial of such suit, the written award shall be *conclusive of such damages aforesaid,* and read as evidence in said case; and upon the trial of the case (which shall be at the first term of the Court) the Jury

Macon & Western Railroad *vs.* Davis, administrator.

shall find for the plaintiff the amount of the damage to the property, the Railroad fare to the Court and back, and such damage for time and trouble, not less than fifty per cent. on the damage for the property, as to them may seem reasonable and just." The Act of 1850, which purports to be amendatory of that of 1847, provides that " in all cases where an award shall be made in conformity with the provisions of the 2d section of the Act of 1847, the same shall be filed in the Clerk's office of the Superior Court of the County in which the principal office of the Railroad may be, and it shall be the duty of such Clerk to make out and serve a copy thereof on the President of said Company, or by leaving it at said Company's office within ten days after filing said award. And within twenty days after such service, the Clerk shall issue execution for the amount of said award, and the costs attending said filing, copy and service, against said Company, *unless* the said Company by one of its officers or its attorney, shall enter an appeal in the usual manner, on paying costs and giving security, in which case said claim for damages shall stand for trial before the Special Jury, at the first term after such appeal, upon the same terms, restrictions and liabilities as apply to, and govern other appeal cases, and judgment and execution shall be rendered and issued accordingly." In our judgment, all those parts of the Act of '47, which relate to a suit on the award, which declare that the written award shall be conclusive as to the damages on the trial, and which direct the Jury to find additional damages and extra costs, are superseded by the Act of 1850. We are therefore saved the necessity of giving judgment on their constitutionality. The Court below and counsel for the defendant in error before this Court, hold that the Act of 1850 only modified these provisions of the Act of '47, so far as to substitute an appeal for the suit on the award, and the usual damages on appeals for the fifty per cent. or larger, directed by the latter Act, leaving in full force, the enactment that the award should be conclusive as to the damages. And they both hold that when in the Act of '47, the Legislature declared that the written award should be conclu-

VOL. XIII 11

sive as to the damages, they meant that it should be conclu-
sive as to the *fact* of damage, thus shutting out all defence as
to the actual injury or destruction of the property, and admit-
ting an issue as to the amount of the compensation.   We dif-
fer from the presiding Judge and counsel in regard to this
construction.   We think that the Legislature, in so many
words, have declared that the award should be read in evi-
dence on the trial against the Railroads, and should be conclu-
sive of *the damages*.   That is, conclusive as to  the amount to
be recovered as damages for the injury to, or destruction of
the property, leaving the fact of the injury or destruction
open.   It is not necessary to enlarge upon this point, inas-
much as we are clear that all these provisions of the Act of
1847 are repealed by the Act of 1850, and that the rights of
the parties on the appeal trial,  are to be ascertained by that
Act.   But if we thought otherwise, and were now driven to the
necessity of pronouncing upon the constitutionality of the Act
of 1847, we would be constrained to declare it unconstitutional,
and that whether we or they have adopted the true construction.
If we are right, then the Act would be unconstitutional, because
it denies to the Railroads a trial by Jury, in the ascertain-
ment of the amount for which they are to be charged for an
alleged trespass; and if they are right, because it denies to
the Railroads a trial by Jury in the ascertainment of the fact
whether they are or are not guilty of an alleged trespass.
Coupled with the construction which the presiding Judge gave
to the 1st section of the Act of 1847, to wit, that that section
makes the companies liable for injuries to property,  at all
events and under all circumstances, irrespective of negligence
on the part of either party, the clause which makes the award
conclusive, in their or our view of it, gives to the Act of 1847,
a character of monstrous injustice, unparalleled in  the history
of legislation.   The Legislature of 1850, seeing and feeling that
the Legislature of  1847 had gone too far, applied the correct-
ive.   I do not enter into the argument to prove that the pro-
visions of the Act of '47, which I have been remarking upon,
are unconstitutional.

[7.] In the argument of this cause, much was said, on the one side, about the power and despotism of the Railroad Companies ; and about the inviolability of charter rights, on the other, in connection with the power of the General Assembly to legislate in reference to Railroad corporations. I advert to these things for the purpose of saying, that extreme positions, taken however boldly, and maintained however ably, are not arguments before this Court. The rights of corporations and the rights of a citizen against them, are not new themes with us.

[8.] Nor are we at all unsettled in our view, as to the relative rights and obligations of this Court and the Legislature. Whilst we hold a charter subject to strict construction as to all rights claimed under it, we also hold, that when rights vest under a grant from the Legislature, those rights are inviolable, and will be protected by this Court, when revoked or impaired by legislation. Whilst we hold that it is competent for the Legislature to modify remedies for the assertion of rights against a corporation, or in favor of a corporation, yet it is not competent for the Legislature to defeat a right by legislation upon the remedy. Aside from the rights secured to them by their charters, the corporations of our State, are, like a citizen, amenable to such legislation, within the Constitution, as the General Assembly may in its wisdom adopt, and are, equally with the citizen, entitled to the protection of the general law. The Legislature is bound by the Constitution as well as this Court, and the members of the Legislature, like ourselves, are sworn to maintain it. All presumptions are in favor of the constitutionality of an Act of the Legislature, and hence we hold ourselves bound by the law of extreme caution, when invoked to decide against the constitutionality of a Statute. We will not pronounce a law unconstitutional, unless it be *plainly* unconstitutional. If we have doubts, those doubts determine the question in favor of the law. If however, we have no doubts, then our highest obligation and the most sacred of our functions, demand a judgment against the law. If I understand the position which we occupy under

the Constitution and Laws of Georgia, correctly, we are a Court, not alone for the purpose, but pre-eminently for the purpose of protecting the people against unconstitutional legislation. The Judiciary is the bulwark which the Constitution has provided, to resist the encroachments of the Legislature, and when that is broken down, I cannot see but that our beautiful system of government, in all its parts, must be whelmed in a flood of common ruin. I do not magnify myself—far from it—but mine office. I do not wish to be understood as intimating that counsel in this case, denied any one of these general propositions, but I have thought that the occasion would justify their assertion; the more especially, as elsewhere some of them have been denied by eminent counsel, before this Court, and by eminent men before the country.

[9.] We do not consider that there is any doubt as to the repeal of the Act of '47, to the extent stated. It cannot be affirmed that those provisions of that Act and the Act of 1850, can both consist and be sustained. The Act of '47 directs one course to be taken on the award, and the Act of '50 another. The former directs a suit on it, by the party complainant; the latter says, it shall be filed in the office of the Clerk of the Superior Court, and after notice, to become a final judgment, upon which execution is to issue, unless an appeal is entered by the Railroad. In the two Acts, there is a conflict—indeed, an irreconcileable repugnance up to the entering the appeal. And if an appeal is entered, then the Act of 1850 declares that the *claims for damages* shall stand for trial, before the special Jury at the first term after the appeal, upon the *same terms, restrictions and liabilities* as *apply to, and govern other appeal cases.* These *terms, restrictions and liabilities* relate to the case made by the appeal; that is, the " claim for damages," and not to the entering of the appeal, as argued by the counsel for the defendant in error. They do not refer to conditions precedent to entering the appeal, for by previous provision *they* are required. The Act provides that the Company may enter an appeal in the usual manner, by *paying costs and giving security.* But in our

opinion, they refer to the rights on the trial, which belong to all appellants in similar suits, under the laws of the land, and do in fact, give to the Company all such rights—such as the right to plead and put in issue their guilt or innocence of the alleged trespass, their own care and diligence, the negligence of the complainant, the value of the property destroyed, or the amount in damages, of the injuries done, as the case may be. And farther, they give to the appellants the right of trying these issues by those rules of evidence, which obtain in like cases when a citizen is appellant. · They also bring the appellants under those obligations which the law imposes in other cases of appeal; such as liability to damages for a frivolous appeal. Such is our construction of the Act of 1850. It is therefore, in conflict with the Act of 1847, in all those provisions which relate to the suit, as directed by that Act, on the award. If so, the last declared will of the Legislature prevails.

[10.] Upon the trial, counsel for the Railroad tendered in evidence the testimony of *Mr. Snaw*, taken by commission, to prove that the destruction of the property was without negligence on the part of the Company, and was occasioned by the negligence of the complainant, through his servant. The presiding Judge ruled out this evidence, and the appellants excepted. Upon our construction of the Acts of '47 and '50, we have already seen that it was competent for them to plead and prove the absence of negligence on their part, and the neglect of the complainant. It is proper, however, to consider the ground occupied by counsel for the complainant more at large. The position taken is, that the Common Law rule of liability for injuries to property, in cases like the present, is repealed by the first section of the Act of 1847, and that that section makes the Railroads liable at all events, with or without negligence on their part, and with or without negligence on the part of the owner. We have no idea that the Legislature of 1847 intended to do a thing so grossly absurd, and so flagrantly inequitable. It would be strange indeed, if the General Assembly had made, or should ever make a citizen or

a corporation, in the pursuit of a calling authorized by law, liable for injuries done to the property of another, without fault on the part of the citizen or the corporation, and by the negligence or wilful wrong of the owner. Such legislation would be a reproach to the civilization of the age. No such rule of liability is found on the Statute book of any State of this Union, or of Great Britain, and I dare say, never will be found in the legislation of any free State. Besides its oppressive injustice, it would be grossly inexpedient, inasmuch as it would deny to the public the incalculable benefits of Railroads, for no company would long exercise franchises thus encumbered. That such liability would be violative of the contract between the State and the corporation, can scarcely admit of a question. But it is not to be found in the Act of 1847. The section referred to, is in the following words: "Be it enacted, that the several Railroad Companies of this State, shall be held liable in law for any damages done to live stock or other property (to the owner or owners thereof) by the running of the cars or locomotives of said Companies on their Roads respectively." The Legislature did not intend to create a *new* liability, but to declare the liability of Railroads to the *old* Common Law rule. The necessity of such a declaration may be found in an impression existing to some extent, that Railroads, by virtue of their charters, are exempted from the operation of the Common Law, as to liability for injuries done to property. Negativing this impression, the main object of the Act of '47 unquestionably was, to provide a new, more summary, and more convenient remedy against Railroads. That a repeal of the Common Law is not contemplated, may be inferred from the language of the Act itself, which declares that they shall be liable "in law," that is, according to the law as it exists. The Act, after making this declaration, proceeds to point out the mode of procedure. We are the more fully satisfied with this construction, because it is the only reasonable one, of which the Act is susceptible.

As no point was made in this case as to what shall consti-

tute the negligence on the part of a Railroad, which will make it liable for property injured or destroyed, or as to what shall constitute the negligence on the part of the plaintiff suing, which will prevent his recovery ; I shall not discuss those topics, contenting myself with stating the following general propositions : It is a rule of the Common Law, that all persons shall so use their own property as not to injure that of another person. *Sic utere tuo ut alienum non lædas.* They are bound to reasonable care and diligence, and will be liable for gross neglect. In cases arising under this rule, the question is left to the Jury, whether with reference to the caution which a man of ordinary prudence would observe, the defendant has been guilty of gross negligence. Railroads have no exemption from the operation of this rule. How far it may be modified by the numerous charters granted by the Legislature in this State, it is unnecessary to inquire. Certain it is, that if a company be by their charter, or by legislation consistent with it, subjected to duties or conditions more stringent in this regard, than those imposed by the Common Law, the Common Law will yield to the charter or the Statute. And the same is true of privileges which, being granted to the Company, relax the stringency of the Common Law. It is also a general rule that no one is entitled to recover damages for an injury to his property which is occasioned by his own negligence or consent. As modifications of these rules, it seems to be settled, that if both parties be in default, the plaintiff cannot recover unless the act or omission of the defendant which occasions the injury was intentional, or unless it was impossible, by the exercise of ordinary care, for him to have avoided the consequences of the defendant's negligence. Whilst Railroad corporations are liable for injuries to property, both by our own Statute and the Common Law, as above stated, it is also true that others are in like manner liable to them for injuries done to their locomotives, cars, and other property, in the negligent use of their own property; and the same principles which apply to, and govern a case against the companies, apply to, and govern a case in favor of them.

*Vaughn vs. Menlon*, 3 *Bing. N. C.* 468. *Tuberville vs. Stampe, Ld. Raymond*, 264. 1 *Salk.* 13. *Bridge vs. Grand Junction Railway Co.* 3 *Meeson and Wels.* 248. 10 *Ib.* 546. *Butterfield vs. Foster*, 11 *East*, 61. *Marriott vs. Stanley*, 1 *Scott N. R.* 392. *Lynch vs. Nurdin*, 1 *Q. B.* 29. *Gould vs. Oliver*, 2 *Scott N. R.* 257. 2 *Hen. & Munf.* 423. 3 *East*, 596. 1 *Camp.* 497. 5 *Hill's N. Y. R.* 282, and note a. 6. *Car. & Pain*, 23. 19 *Wend.* 401. 7 *Mass.* 169. 3 *Wend.* 391. *Spenser vs. Utica & Schenectady Railway Co.* 5 *Barbour Sup. C. R.* 337. *Tonnawanda R. R. Co. vs. Munger*, 5 *Denio*, 255. 4 *Harington R.* 252. 15 *Conn.* 124. 2 *Iredell*, 324. 2 *McMullin*, 403.

The questions discussed cover the exceptions founded on the motion to dismiss and the charge of the Court.

Let the judgment be reversed.