MAYES *et al. v.* DANIEL, ordinary.

SHADRICK *et al. v.* BLEDSOE, ordinary.

Nos. 12365, 12367. June 22, 1938.

*W. W. Gaines, William Schley Howard, C. L. Shepard, Walter McElreath, L. A. Whipple, R. S. Wimberly,* and *R. E. L. Whitworth, W. D. Aultman, George B. Culpepper Jr., Jule Felton, J. W. Culpepper, J. J. Gainey, C. E. Hay, R. L. Greer, Olin Hammock, A. K. Maddox, S. B. McCall, G. C. Robinson, S. F. Memory, C. L. Cowart,* and *L. E. Healh,* for plaintiffs.

*Carmichael & Grove,* for Daniel, ordinary.

350

RUSSELL, Chief Justice. ■ Although it is the duty of the judiciary to declare void all legislative acts that violate the State constitution (Code, § 2-402), yet since "the legislature [as well as the courts] is bound by the constitution, . . and the members of the legislature, like ourselves, are sworn to maintain it," and "all presumptions are in favor of the constitutionality of an act of the legislature" *(Macon & Western R. Co. v. Davis, 13 Ga.* 68 (8), 83), and "a solemn act of the legislature will not be set aside by the courts in a doubtful case" *(Wright v. Hirsch, 155 Ga.* 229, 233, 116 S. E. 795), "to authorize the court to set aside a statute as repugnant to the constitution, the conflict must be plain and palpable." *Brooks v. Mutual Loan &c. Co., 95 Ga.* 178, 181 (22 S. E. 55); *Harrison v. Hartford &c. Ins. Co., 183 Ga.* 1 (187 S. E. 648); *Coy v. Linder, 183 Ga.* 583, 585 (189 S. E. 26). In determining constitutional questions, like others, the courts are not permitted to concern themselves with the wisdom of an act, or to apply or obtrude the personal views of the judges as to such matters, but are confined to settled principles of law under the long-established general rule stated.

■ As a general rule, there is in every case some question of law which controls a proper decision of the adjudication; and after a careful consideration of the pleadings and of the arguments of numerous distinguished lawyers who appeared in this case, we have reached the conclusion that the mudsill in this case, which is controlling and which must primarily decide all issues, is whether

the "act to be known as the 'revenue tax act to legalize and control alcoholic beverages and liquors,'" etc., is so related to the call of the Governor, and therefore so comes within his proclamation convening the extra session of the General Assembly as to comply with the requirements of art. 5, sec. 1, par. 13, of the constitution of 1877. In our opinion, the discussion of all other questions involved in the present record is subsidiary; for if the act as passed fails to comply with the constitutional requirement as to the passage of legislation at extraordinary sessions, all other questions become futile. On the contention that the act in question violates the provisions of art. 5, sec. 1, par. 13, of the constitution, learned counsel for the plaintiffs refer to the law of Oregon and Alabama, and decisions by the courts of those States; but we need give no other reason for refusing to follow these two decisions than to note that the pertinent provision of the constitution of Georgia is materially different from those contained in the constitutions of Oregon and Alabama. The laws of these two sister commonwealths require that when an extra session of the legislature is to be called, the Governor shall *specifically* state such objects as are included within his call, while art. 5, sec. 1, par. 13, of the constitution of Georgia requires only that the subjects which may be dealt with by the General Assembly must be related to those that are set forth in the Governor's proclamation. The first question before us, therefore, is whether the act in regard to permitting the sale of liquors is constitutional, measured by the constitutional requirement imposed by art. 5, sec. 1, par. 13, of the constitution of 1877. Upon careful consideration of the question we are convinced that such is the case, and that the General Assembly did not violate this constitutional provision in the passage of what is commonly known as the liquor-store act. It will be noted that included as objects of legislation in the proclamation of the Governor are the following: "Taxation for all State, county, municipal, school district, or other public purposes or objects, including all kinds of revenue that is or may be raised for public purposes by any manner of taxation whatever, including excise, license, franchise or privilege taxes, regulations or penalties. . . Laws pertaining to the right of the State in contraband or outlawed goods, authorizing the State to acquire title and possession thereof, and providing for their confiscation, destruction, sale or distribution. . . Laws pertaining to nui-

sances and the practice of professions, businesses and trades. . . Penal laws respecting any of the objects and matters included in this call." It is our opinion that, under the objects stated in the call which have been quoted, the provisions of the bill under attack :were such as related to the stated objects.

■ The act under consideration is attacked as in violation of art. 3, sec. 7, par. 8, of the constitution, which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." It is asserted that this constitutional provision is violated by the act in question, because: "(1) It contains matter in the 2d and 3d sections thereof, which seek to repeal the present prohibition laws of Georgia as to certain counties, which must be done, if at all, under the police power of the State. (2) It contains matter in section 4 thereof, providing for elections in separate counties of the State on the contingencies therein set out. (3) It contains in sections 2, 3, 4, 7, 9, and 23B [matter] which seeks to legalize the liquor traffic in Georgia, which can be done only by the use or abuse of the police power of the State. (4) It contains matter in sections 9 and 11 thereof which seeks to levy license and excise taxes on the traffic in alcoholic liquors, and calls itself in section 1 thereof a revenue tax act. (5) It contains matter in sections 9-A, 14, 15, 16, 18, 20, 21, 24, 26, 27, 28, 29, and 30, prescribing various police regulations for the so-called control and regulation of the liquor traffic, and this is done under the police power of the State operating for the general welfare. (6) It contains matter in section 8 purporting to delegate to the State Revenue Commission power to make other police rules and regulations for the control of said traffic. Plaintiffs show therefore that if said law is held to be a tax law, that it contains, in addition to the matter of taxation, five other subject-matters. And petitioners further show that said act is in conflict with the last-cited section of the constitution, in that it contains matter not expressed in the title, as follows: (7) It contains in the 2d and 3d sections thereof matter purporting to amend designated chapters of the Code without any reference being made thereto in the title thereof. (8) It contains matter in said sections 2 and 3 thereof purporting to repeal the criminal laws of the State against the manufacture, possession, and sale of alcoholic beverages, without any reference thereto be-

ing made in the title thereof." In the brief of counsel for the plaintiffs it is said: "If this act is held to be an act for the raising of revenue, then the act is void for plurality of subject-matter; for, in addition to its revenue features, it unquestionably contains a large number of police regulations entirely unrelated to the imposition of the tax imposed."

We do not think the act either refers to more than one subject-matter, or contains matter different from what is expressed in the title. The act is essentially one for raising revenue, and the regulations prescribed in different sections thereof are germane to this main purpose. In *Lloyd* v. *Richardson*, 158 *Ga.* 633 (124 S. E. 37), it was said: "The 'subject' of an act is the matter or thing forming the ground work of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back they will lead the mind to the subject as the generic head. . . An act is not unconstitutional because more than one object is contained therein, where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act, or when the provisions of the act are of the same nature and come logically under one subject. . . The provision in the organic law is against duplicity or multiplicity of subjects which constitute the main objects of the act, and is not aimed at objects or subjects which are germane to the main subject-matter included in it." In *Hope* v. *Gainesville*, 72 *Ga.* 246, it was said: "When it is plain by the act a certain thing is to be done, any instrumentality authorized by the act in aid of, to conduce to, to assist, the one great purpose of the act is not a different subject-matter, but is part of the main subject-matter; it is part of the 'substantial unity in the statutable object,' and is not unconstitutional." It was said in *Plumb* v. *Christie*, 103 *Ga.* 686, 700 (30 S. E. 759, 42 L. R. A. 181), "A substantial and not a literal compliance with this provision in the constitution is all that is necessary. It was never contemplated that the title should give a complete synopsis of the act." In *Banks* v. *State*, 124 *Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007), it was held: "Provisions germane to the general subject-matter embraced in the title of an act, and which are designed to carry into effect the purposes for which it was passed, may be constitutionally enacted therein, though not

354

referred to in the title otherwise than by the use of the words, 'and for other purposes.'" Perhaps the most striking illustration of the correct application of the constitutional provision with which we are now dealing is to be found in *Central of Ga. Ry. Co.* v. *State,* 104 *Ga.* 831, 847 (31 S. E. 531, 42 L. R. A. 518) : "You can, in one act, charter Greater New York, with its millions, and embrace therein an endless variety of legislation concerning Police, Streets, Wharves, Courts, Jails, Mayor, Council, Tax-Collecting, Tax-Assessing, Legislative and Executive functions, but you can not in the same act charter two small villages like High Shoals and Belton." This court held that the adoption of an entire Code, with its perhaps hundreds of subjects of various and different natures, embraced at last and essentially only one general subject-matter. So we conclude that this act is not subject to any of the attacks made on it as violating art. 3, sec. 7, par. 8, of the constitution; that its one main object is that of raising revenue, and that the several regulatory provisions included therein are germane to this primary purpose.

■ Another ground of attack on the act in question is that it violates art. 3, sec. 7, par. 17, of the constitution, which declares : "No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." The plaintiffs allege : (1) Section 2 of said act seeks to amend a general law of the State by reference only to a title number of the Code. (2) Section 3 of said act seeks to amend a general law of the State by reference only to chapter numbers of the Code. It will be noted, first, that the requirement is that "no law, or section of the Code, shall be *amended or repealed,*" etc. (Italics ours.) What law or section of the Code is here amended or repealed? Sections 2 and 3 of the act are as follows: Section 2. "That on and after the passage of this act the official Code of Georgia, title 58, be and the same is hereby amended, by adding a new section 58-124, which shall read as follows: '58-124. The limitations and restrictions of this chapter shall not apply to those counties in which a majority of those voting at an election held for the purpose vote in favor of the taxing and legalizing and controlling of alcoholic beverages and liquors as may be provided by

the General Assembly.'" Section 3: "That on and after the passage of this act the Code of Georgia of 1933, title 58, be and the same is hereby amended by adding a new section 58-305, which shall read as follows: '58-305. Provided that nothing in chapter 58-1, 58-2, and 58-3 of this Code shall apply in those counties in which a majority of those voting at an election held for the purpose vote in favor of the taxing and legalizing and controlling of alcoholic beverages and liquors as provided in this act.'" True, the word "amended" is used, but as a matter of fact no section of the Code is mentioned and no specific law is referred to. What happened was that the General Assembly passed a new law to legalize and control alcoholic beverages, and to tax the same, and for convenience they stated that the new law should be placed in title 58 of the Code, and should comprise two new sections thereunder. It will be noted that the constitution, before the word "referred" places the word "mere," i. e., by *mere* reference to its title. When we consider the manifest purpose of the constitutional provision, which was none other than that the members of the General Assembly should be fully put on notice of what law it was that the bill proposed to amend (see *Fullington* v. *Williams,* 98 *Ga.* 807, 810, 27 S. E. 183), and reading the act itself, we can not believe that the act should be struck down by reason of any repugnancy to the provision of the constitution above quoted.

■ Another attack made on the act is that it is in violation of art. 1, sec. 4, par. 1, of the constitution of Georgia, which provides: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The only authority cited by counsel for the plaintiffs on this question is *Smith* v. *State,* 90 *Ga.* 133 (15 S. E. 682). That case does not support the attack made on the act now under consideration. So far as pertinent, the *Smith* decision only held: "By the general law (Code, § 809(b)) as amended by the act of September 24th, 1883 (Acts of 1882-3, p. 55), liquor dealers are authorized to register without obtaining permission from any one, and without paying any county taxes. The local act of September 28th, 1889 (Acts of 1889, p. 1344), applicable to the County of Harris, declares it to be unlawful to sell in that county by the gallon or in larger quantities, unless the seller shall first pay to the county commis-

sioners a tax of $25.00, obtain the written consent of two thirds of the bona fide resident freeholders within three miles of the locality where it is proposed to sell, and file the same with the county commissioners at the time of registering; and that it shall be discretionary with the commissioners to decline to permit any applicant to register. This local act contravenes that provision of the constitution (Code, § 5027) which declares that laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

"It is not necessary that every county in the State, at the time of the passage of the law, should fall within its operation, but it is necessary that none should be excepted in such a way that it can never fall within its provisions." *Thomas* v. *Austin,* 103 *Ga.* 701, 704 (30 S. E. 627). "The law embraced in the Code of 1882, for the exercise of local option as to fences, is a general law having uniform operation throughout·the State, notwithstanding it embodies the option principle to be exercised locally and· separately by each county or militia district. We think the sounder view, and one which must finally prevail, is that laws of this character are rightly classified as general and as having uniform operation." *Mathis* v. *Jones,* 84 *Ga.* 805, 807 (11 S. E. 1018). In *Crabb* v. *State,* 88 *Ga.* 584 (15 S. E. 455), which has often been cited from the time the opinion was delivered until 168 *Ga.,* and in which the rule therein was concurred in by two of our most distinguished Chief Justices, Bleckley and Simmons, Mr. Justice Lumpkin, delivering the unanimous opinion of the court in regard to what was known as the general local-option liquor law, by means of which the State finally adopted the present "bone-dry" law, held: "The act approved September 18, 1885, and known as 'the general local-option liquor law,' is a general law providing for obtaining prohibition in the several counties of this State. It is true that sec. 9 of this act enacts that no election shall be held under its provisions in any county, or other place, where the sale of spirituous liquors is already prohibited by high license, local option, or other legislation, so long as these local laws remain of force; but the act, nevertheless, undoubtedly contemplates that it may operate in counties, or other localities, where prohibition existed at the time of its passage, whenever prohibition shall cease to exist, and therefore the

act may, and does, apply to every county and section of the State."
"The act approved October 21, 1891 (Acts 1890-91, vol. 1, p. 135),
in relation to public roads, is a general law, and as such does not,
because it provides that it 'shall not go into effect in any county
in this State until it is recommended by the grand jury of said
county,' violate the constitutional requirement that laws of a gen-
eral nature shall have uniform operation throughout the State. Nor
does the act confer upon grand juries the power of legislation."
*Haney* v. *Commissioners,* 91 *Ga.* 770 (18 S. E. 28). "The act
approved November 26th, 1890, amending the fence laws of the
State and repealing section 1449 of the Code (Acts of 1890-91,
p. 69), is a general law, and is constitutional. It operates gener-
ally throughout the whole State. Every county in the State may
avail itself of the provisions of this act, and of the one of which
it is amendatory. Whenever and wherever an election is held and
fences are abolished by a vote of the people, this act applies. No
county or section of the State is excluded from its operation. All
that is necessary to put it in force in any county is to comply with
the requirements of the act of which it is amendatory." *Thomas*
v. *State,* 92 *Ga.* 1, 6 (18 S. E. 44). "The act of August 21, 1922,
providing for the establishment of the 'county-manager form of
county government,' is a general law having general operation
throughout the territorial limits of this State. The fact that it
provides that it shall not go into effect in any county of this State
until adopted by a majority vote of the qualified voters of such
county does not rob it of its character as a general statute." *Mar-
but* v. *Hollingshead,* 172 *Ga.* 531 (158 S. E. 28). We think the
act under consideration in this case is of the same character as the
former local option law, the fence laws, road laws, etc., which
have been held to be general laws for many years, and that said
act does not violate the provision of the constitution prohibiting
the enactment of special laws for which provision is made by an
existing general law.

■ The act is alleged to be unconstitutional because violative
of art. 3, sec. 7, par. 10, of the constitution, which declares: "All
bills for raising revenue, or appropriating money, shall originate
in the House of Representatives, but the Senate may propose, or
concur in amendments, as in other bills." The plaintiffs in their
amended petition say: "Said act is in conflict with the above pro-

vision of the constitution, if held to be a revenue bill, or a bill for raising revenue, because it did not originate in the House of Representatives, but was introduced in the Senate as a *substitute for* and not an *amendment to* the so-called 'Thomas bill' which had been passed by the House of Representatives; and the so-called 'revenue tax act to legalize and control alcoholic beverages and liquors' therefore originated in the Senate, and not in the House." This attack is entirely without merit. As is universally admitted in parliamentary procedure, substitute is merely one method of amending in legislative proceedings. Mell's Parliamentary Practice, § 136; Jefferson's Manual of Parliamentary Practice, § 467; Manual of the General Assembly of Georgia, 1935-36, p. 159, Rule 95. And the paragraph of the constitution quoted provides, "but the Senate may propose, or concur in amendments, as in other bills." In addition, in the recent cases of *Williams* v. *MacFeely,* and *Williams* v. *State,* 186 *Ga.* 145, 154 (196 S. E. 225, 230), in which Mr. Justice Grice ably dealt with the question in behalf of the unanimous court, it was held, following previous decisions of this court, that an act of the General Assembly, duly signed by the President of the Senate, the Speaker of the House, approved by the Governor, and enrolled in the office of the Secretary of State, could not be impeached by showing from the journals of the House and Senate that the constitutional requirements as to its passage were not observed.

It follows that there was no error in refusing an injunction in the *Shadrick* case, or in sustaining the demurrer in the *Mayes* case. *Judgment in each case affirmed. All the Justices concur, except*

HUTCHESON, Justice, dissenting. It is with no little regret that I find myself in disagreement with my colleagues upon a question which, if not of vital public importance, is certainly of great public interest; but to my mind the act attacked as invalid violates at least one provision of our constitution. Holding to that opinion, I can not, of course, concur in the judgment of affirmance. I am not unmindful of the principles, which seem to have guided the majority, that a legislative enactment is not to be set aside as unconstitutional unless it is palpably and obviously so, and that in considering such a question every presumption is to favor the validity of the statute. These principles mean no more than that, until the contrary appears, it must be presumed that the act is

valid, since the members of the legislature, having taken an oath to support the constitution, must not be presumed to have violated it. But when an act is challenged, it must be measured by the constitutional provision invoked by the challenger; and if it is found, upon a fair consideration of the enactment and the constitution, that the statute offends the constitution, it must fall. If the principles referred to mean more than this, I can not assent to them; for if they can be taken to require a state of mental conviction which goes beyond satisfaction of mind and conscience, they impose upon the judges a burden the constitution never intended that they should assume, and make virtually meaningless the mandate that the judiciary shall declare unconstitutional acts void.

If the alcoholic-beverages act of 1938 does not relate to some object stated in the proclamation of the Governor convening the extraordinary session of the General Assembly, it is void, and the court should so declare. The objects of this provision, of course, are that the people may be apprised of the purposes for which the General Assembly is about to be convened, and that the executive may restrict the business to be considered, and thus avoid prolonged extraordinary sessions. It seems to me that at least one of these purposes is entirely defeated if the ability to draw nice distinctions, and a knowledge of the meaning attributed to words and phrases by judicial decision, are necessary to notice as to what may or may not be considered at an extraordinary session. I am willing to concede the point that a synopsis of proposed laws need not be embodied in the proclamation, and that it is necessary only that enactments relate to some stated object; but, as I interpret the constitution, the relationship must be a reasonable one, and the legislation must be of such a character as would be suggested from a normal examination of the proclamation by a layman, not from a close and technical scrutiny by a trained lawyer. If it is necessary to justify the legislation to resort to such technicalities, it seems to me that it ought not to stand. The proclamation before us is clothed in much ambiguity. It may be that its author sought to include the legislation here attacked, without expressly doing so. If such was the purpose of the vast generality of the language used, it has met the approval of the court. I hold to the view, however, that if the Governor had purposed to lay

before the Assembly a proposed repeal of the existing prohibition law, plain and unambiguous language for the expression of that purpose was readily available. It was not used. A careful examination of the proclamation would never have suggested to the lay mind that repeal of the liquor laws was contemplated. Even a normal reading by a trained lawyer would not suggest such a purpose. The constitutional provision was not designed to protect any department or division of the government, but to protect the people themselves. A proclamation convening an extraordinary session of the Assembly ought not to be clouded with doubt or shrouded in uncertainty. For these reasons alone, I do not think the letter or the spirit of the constitution permits a holding that the law here attacked is valid.

But even if the relationship between any object stated in the proclamation and the act is required to be one such as only a trained legal mind may detect, it must at least be direct, and such as rationally connects the enactment to the stated object. Measured by this rule, the law here falls far short. The act must be justified, if at all, as relating to the object of raising revenue, as stated in the proclamation. There is nothing else in the proclamation to which it is remotely akin. It may be conceded that the call is broad enough to justify any sort of revenue statute; it may even be conceded that it would permit the enactment of any sort of penal or regulatory provision for the enforcement of any revenue law, and it would still fall far short of justifying the present statute. This is true for the very obvious reason that the exercise of the police power of the State, a power existing entirely independently of the power of taxation, was necessary to bring into being an object upon which the taxing power could legitimately operate. No such exercise of the police power was provided for or contemplated by the proclamation—yet without it the so-called revenue law would be meaningless and futile. It could be argued that under the dictum of *Miller* v. *Shropshire*, 124 *Ga.* 829 (53 S. E. 335, 4 Ann. Cas. 574), a repeal by implication of the prohibition statute might result from a law taxing liquor, but here there was no repeal by implication—the repeal was by express enactment. Furthermore, even if the rule just referred to is sound, no mere repeal by implication, such as might be justified by that rule, could be operative in one part of the State and not in another.

And there, to my mind, lies the infirmity of the position of my colleagues. If we could say that a law generally repealing the existing liquor law is reasonably related to the object of raising revenue stated in the proclamation, the act here challenged is not of that nature. Many of the prohibitions of the old liquor law remain of force throughout the State, and substantially all of its provisions remain of force in counties which do not elect to permit the liquor business to be there carried on. The act is a local-option law—not a mere repeal of the existing prohibition law. It embodies a complete code on the subject, a complete set of police regulations, which have nothing to do with the collection of the tax imposed, and are not remotely related to the object of revenue, such as, to my mind, could not be lawfully enacted under the proclamation convening the extra session. For these reasons, I can not concur in the judgment of affirmance.