## A01A1145. IGIDI v. THE STATE.
(554 SE2d 773)

MIKELL, Judge.

Josiah Eged Igidi was charged with two counts of armed robbery and two counts of possession of a firearm during the commission of a felony.[1] A Gwinnett County jury convicted Igidi of one count of armed robbery and acquitted him of the remaining charges. On appeal, Igidi seeks the reversal of his conviction on several grounds. Specifically, he argues that the trial court erred by: (1) allowing the state to present evidence of a subsequent armed robbery offense as a continuing offense or as a part of the res gestae; (2) failing to give limiting instructions to the jury prior to co-defendant Charles Allen's testimony regarding the subsequent offense; (3) disallowing Igidi's cross-examination of Rudolph Anderson about Anderson's involvement in a prior armed robbery incident; (4) denying Igidi's request for a jury charge on robbery; and (5) denying Igidi's motion for mistrial after the court gave the jury a charge during its deliberation that had not been included in the original charge. Igidi also contends that he was denied effective assistance of counsel. For the reasons stated below, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[2] So viewed, the evidence shows that at approximately 10:30 p.m. on July 13, 1997, Ying Wai Fung, also known as "David," and John Fleming were playing tennis at Lucky Shoals Park when they were approached by two men. Fleming testified that the first man had on a white mask and pointed a red light in his face, which he later realized was a gun. As far as he could tell, Fleming stated, the first man was the only one with a gun. The perpetrators asked for their keys and wallets. After obtaining these items, the perpetrators drove off in Fleming's and Fung's cars, a 1992 black Nissan Altima and a 1992 Acura Integra, respectively. Fleming and Fung went to the nearest gas station and called the

---

[1] Charles Allen and Rudolph Anderson were also charged with these offenses. Prior to trial, Allen pled guilty to all of the charges, and Anderson pled guilty to two counts of armed robbery.

[2] (Citations and punctuation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

police. Officer J. P. Surowiec responded to the call.

Fung corroborated Fleming's testimony, except that he recalled specifically that both men were armed. Fung described the assailants to Officer Surowiec as two black males in their early twenties, 5'7" to 5'8" tall, around 150 pounds, wearing ski masks and dark clothes. Fung also told Officer Surowiec that one of the men had a gun with a laser sight. Like Fleming, Fung testified that he focused on the first gunman because he was pointing the laser sight at Fung's eyes.

Co-defendant Allen testified that he, Anderson, and Igidi went to the park on July 13, 1997, to steal a car to commit armed robberies. He explained that Anderson dropped them off, then Allen and Igidi, who were both dressed in black, put on their masks and walked onto the tennis court. Allen testified that he wore a skeleton mask and carried a 9-millimeter gun with a laser scope, while Igidi wore a black ski mask and carried a .38 Smith & Wesson revolver. Allen and Igidi obtained the victims' keys and stole their cars. They used Fleming's car to rob a Krystal's restaurant two days later[3] and left it at Anderson's apartment complex.

Allen testified that he was arrested while driving Fung's car on August 26, 1997, and that he pled guilty to the armed robbery of the Krystal's restaurant. On July 17, 1997, the Gwinnett County police found Fleming's car parked at Hunters Landing Apartments, which is where co-defendant Anderson resided.

Anderson testified that at about 6:00 p.m. on July 13, 1997, he picked up Igidi and they returned to Anderson's apartment. Amy Warwick, Anderson's fiancée, was also at the apartment. Anderson recalled that he and Igidi picked up Allen later that evening.

Anderson testified that Allen mentioned something about getting cars to commit a robbery, but that he did not know what Allen and Igidi intended to do. Allen also asked Anderson if he could use Anderson's 9-millimeter gun, which had a laser sight. Anderson admitted that he drove Allen and Igidi to Lucky Shoals Park. Though he did not see the masks that were used in the robbery, he recalled that Allen was carrying a bag that might have held them. Anderson recalled that Allen and Igidi returned to Anderson's house the next morning and that Allen told him that they had committed a robbery. Anderson and Warwick drove Allen and Igidi home later that morning.

Warwick testified that she lived with Anderson at Hunters Landing Apartments. At approximately 6:00 p.m. on the evening of July 13, 1997, Igidi arrived at their apartment with Anderson. War-

---

[3] The officer who received the call about the armed robbery at the restaurant testified that the robbery occurred at approximately 5:10 a.m. on July 14, 1997.

wick testified that Anderson and Igidi played videogames while trying to contact Allen. They left the apartment about 9:30 p.m. and returned with Allen. The three of them left again, and Anderson returned at about 1:30 a.m., while Allen and Igidi came in about ten minutes later.

Warwick recalled that Anderson showed her $100 in their bedroom and when she asked where he had gotten it, he told her that Allen and Igidi had committed a robbery. Around 6:00 or 7:00 a.m., Allen and Igidi knocked at their door and asked to be taken home. Warwick also testified that at some point in time, she had seen Anderson with the 9-millimeter gun and a black ski mask.

Igidi gave a statement to Detective M. L. Pusbach on September 2, 1997. Igidi stated that at sometime in early July, he, Allen, Anderson, and Warwick were at Anderson's apartment. He overheard Allen and Anderson talk about committing a robbery at the park. Sometime after the conversation, Anderson took him home. Igidi also stated that he had seen Anderson with a gun that evening. Igidi told the officer that he did not do anything else that night.

1. On appeal, Igidi argues that the trial court erred by allowing the state to present evidence of a subsequent armed robbery offense as a continuing offense or as a part of the res gestae of the instant offense. Specifically, Igidi contends that the state failed to articulate the purpose for which the evidence was introduced. Consequently, Igidi maintains, the admission of the evidence constitutes reversible error. We disagree.

The evidence in question was Allen's testimony that he and Igidi robbed the victims of their cars to commit a subsequent armed robbery. The state offered the evidence as part of a continuing enterprise. The trial court ruled the evidence admissible as part of the res gestae of the crime and because it evidenced motive.

"The state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. This is true even if the defendant's character is incidentally placed in issue."[4] Further, "[e]vidence of a continuous criminal enterprise is [also] admissible."[5] In this case, the evidence tended to show the motive for the first robbery, as well as Igidi's exercise of dominion over the stolen automobile after the robbery in the park, which, alone, makes it

---

[4] (Citations and punctuation omitted.) *Burton v. State,* 212 Ga. App. 100 (1) (441 SE2d 470) (1994).

[5] (Footnote omitted.) *Carruthers v. State*, 272 Ga. 306, 313 (6) (528 SE2d 217) (2000).

admissible as a continuing criminal enterprise.[6] Thus, we find no abuse of discretion in the trial court's admission of this evidence as part of the res gestae.[7]

2. Igidi next enumerates as error the trial court's failure to give limiting instructions to the jury prior to Allen's testimony about the Krystal's restaurant robbery. Again, we find no error.

After specifically ruling that the evidence was admissible as part of the res gestae, but not as similar transaction evidence, the trial court agreed to give a limiting instruction contemporaneous with Allen's testimony about the Krystal's robbery. The court stated:

I will give a somewhat limiting instruction, since it is talking about a different alleged crime, and instruct the jury that any — just to remind the jury that the defendant is on trial only for the crimes that are alleged in the indictment, that he is not on trial for any other crimes allegedly committed in any other county and make sure they understand that.

When Allen testified, the trial judge did not give the contemporaneous limiting instruction, and Igidi did not object. At the conclusion of closing arguments, the trial court gave the following limiting instruction during its charge to the jury:

In this case, the state presented evidence of what they contend was another armed robbery committed — allegedly committed by this defendant. This evidence was admitted for the sole purpose of proving — if you, the jury, find that it did prove — a motive for committing the alleged armed robbery in this case. I just want to remind you that Mr. Igidi is on trial here today this week only for those crimes that have been alleged in this indictment that will be out with you. That is the only thing that he is on trial for. He is not on trial for any other alleged crimes committed at any other time or any other place.

The law is well settled that the trial court does not commit reversible error by failing to give a contemporaneous limiting instruction

---

[6] See id. (evidence admitted as part of a continuing criminal enterprise that the defendant committed several other crimes in Florida after he murdered a victim in Georgia and drove that victim's car to Florida); *Griffith v. State*, 264 Ga. 326, 327 (3) (444 SE2d 794) (1994) (evidence that the defendant and his companion approached a victim to commit a robbery was admitted as part of the res gestae even though the defendant was not indicted for that robbery).

[7] *Altman v. State*, 229 Ga. App. 769, 770 (3) (495 SE2d 106) (1997).

without a request that it do so.[8] While in this case the request was made prior to trial, Igidi did not object at the pertinent time or otherwise alert the court to give the instruction. In *Kirkland v. State*,[9] the defendant argued that the trial court erred because it repeatedly failed to give sua sponte a contemporaneous limiting instruction regarding the allowable uses of similar transaction evidence. We held, "A defendant may not rely on a blanket request for 'contemporaneous' instructions early in the trial: a request for a contemporaneous limiting instruction must itself be made contemporaneously with the admission of the evidence."[10] Similarly, here, Igidi cannot rely on his earlier request for a contemporaneous limiting instruction. Rather, Igidi was required to request the limiting instruction at the time the evidence was offered. Because he failed to do so, there was no error.

3. In his third enumeration of error, Igidi argues that the trial court denied his right to a fair trial when it would not allow him to question Anderson about a previous armed robbery that Allen testified that he and Anderson committed. This argument also lacks merit.

Allen testified that he pled guilty to the armed robbery charge and implicated Anderson, but Anderson was never charged. Igidi's counsel argued that she should be allowed to cross-examine Anderson about this prior crime to show that Igidi did not commit the Krystal's robbery. The trial court did not allow this line of questioning on the grounds that it was irrelevant. Nevertheless, outside of the jury's presence, the court allowed Igidi to cross-examine Anderson about the robbery, and Anderson pled the Fifth Amendment.

"The trial court may restrict the scope of the cross-examination to matters relevant to the issues being tried, and the results of the exercise of that discretion will not be interfered with on appellate review unless the discretion was manifestly abused."[11] We find that prohibiting Igidi from cross-examining Anderson about an entirely unrelated crime for which he was not charged was not an abuse of discretion. Moreover, the trial court could not compel Anderson to testify about the previous incident as such an order would have ignored his constitutionally protected right against self-incrimination.[12] Finally, we note that in light of Allen's testimony that he and Anderson committed the prior incident, with the same type of weap-

---

[8] *State v. Hinson*, 269 Ga. 862 (506 SE2d 870) (1998).

[9] 247 Ga. App. 526 (543 SE2d 791) (2000).

[10] (Citation and emphasis omitted.) Id. at 530 (5) (a).

[11] (Citations and punctuation omitted.) *Bowers v. State*, 241 Ga. App. 122, 124 (4) (526 SE2d 163) (1999).

[12] *Johnson v. State*, 159 Ga. App. 819, 825 (6) (285 SE2d 252) (1981).

ons used in the robbery involved in this case, had the jury desired to conclude that Anderson and Allen committed the Krystal's robbery, instead of Allen and Igidi, it could have done so. "[I]t is not for the appellate courts to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence."[13]

4. In his fourth enumeration of error, Igidi argues that the trial court erred by failing to charge the jury on the lesser included offense of robbery. We disagree.

"A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense."[14] There is no such evidence in this case. No evidence was presented that the robbery was committed without the use of a gun. In fact, both victims testified that a gun was used. "[A]s a party to the crime, [Igidi] was guilty of the offense of armed robbery regardless of whether he personally threatened anyone with the gun."[15] Based on the evidence, the jury could either convict Igidi of armed robbery or acquit him if it believed that he was not present during the incident. Accordingly, the charge on the lesser included offense of robbery was not warranted.[16]

5. Igidi moved for a mistrial after the trial court charged the jury on "parties to a crime," in response to the following question during its deliberation: "Does armed robbery mean he has to have physical possession of a gun or weapon?" Igidi now argues that the trial court's denial of his motion was erroneous. The denial of a motion for a mistrial will not be disturbed on appeal absent an abuse of discretion.[17] Having found no such abuse, we find this enumeration meritless.

"It is within the discretion of the trial court to give or not to give unrequested additional instructions when the jury requests a recharge on a particular point, and the discretion includes the giving of unrequested instructions not contained in the trial court's original charge."[18] In determining whether that discretion was abused, we take "into account the sensitive nature of the judge's responsibility at this stage of the trial and the duty of the trial judge to provide impar-

---

[13] (Footnote omitted.) *Curry v. State*, 243 Ga. App. 712, 714 (1) (534 SE2d 168) (2000).

[14] (Citation and punctuation omitted.) *Edwards v. State*, 264 Ga. 131, 132 (442 SE2d 444) (1994).

[15] *Hopkins v. State*, 227 Ga. App. 567, 568 (1) (489 SE2d 368) (1997), overruled in part, *Mullins v. State*, 270 Ga. 450 (511 SE2d 165) (1999) (applying the "reasonable probability" test when reviewing instances of unchallenged argument constitutes error).

[16] See *Spivey v. State*, 243 Ga. App. 785, 786 (1) (534 SE2d 498) (2000).

[17] *James v. State*, 270 Ga. 675, 677 (4) (513 SE2d 207) (1999).

[18] (Citations and punctuation omitted.) *Ross v. State*, 231 Ga. App. 506, 508 (2) (499 SE2d 351) (1998), overruled in part, *Vogleson v. State*, 250 Ga. App. 555 (552 SE2d 513) (2001) (disapproved *Ross* to the extent that it suggests that it is not reversible error to preclude cross-examination of an accomplice regarding the deal he has reached with the state).

tial and effective guidance on the law for the jury to follow in its deliberations."[19]

In *Taylor v. State*,[20] in response to a question from the jury, the trial court recharged some of the original instructions and also added two additional charges, parties to a crime and prosecution of parties who did not directly commit the crime.[21] Citing *Bollenbach v. United States*[22] we stated, "when a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."[23] Igidi, like the defendant in *Taylor*,[24] argues that at the very least, he should have been given an opportunity to argue to the jury the issue of parties to a crime. We rejected this argument in *Taylor* and do so now. As in *Taylor*,[25] the recharge in this case was warranted by the evidence and legally accurate and was not confusing or misleading.[26] Thus, the trial court did not abuse its discretion when it charged on parties to a crime or when it denied Igidi's motion for a mistrial.

6. In his final enumeration of error, Igidi contends that he was denied his right to effective assistance of counsel because his trial counsel failed to: (1) call key alibi witnesses; (2) call Igidi to testify; and (3) object to the prosecutor's misrepresentation of facts and improper reference to matters not in evidence. We disagree.

"[I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial."[27] Furthermore, "[a] court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one [and its] finding of effectiveness must be upheld unless clearly erroneous."[28] We find that Igidi has not made either showing.

(a) Igidi argues that his counsel should have called his mother, who would have testified that she was with Igidi from the moment she picked him up from work at 6:45 p.m. on the evening of July 13,

[19] (Citation and punctuation omitted.) *Taylor v. State,* 169 Ga. App. 842, 844 (2) (315 SE2d 661) (1984).

[20] Id.

[21] Id. at 843-844 (2).

[22] 326 U. S. 607, 612-613 (66 SC 402, 405, 90 LE 350) (1946).

[23] (Punctuation omitted.) *Taylor,* supra at 844 (2).

[24] Id.

[25] Id.

[26] Id.

[27] (Citations omitted.) *Butler v. State,* 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[28] (Citations and punctuation omitted.) *Green v. State,* 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

1997. We find that counsel's decision not to call Igidi's mother to testify was not deficient.

> The decision as to which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel. The fact that appellant and present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel.[29]

In this case, Igidi's trial counsel testified that she met with Igidi's mother, who prepared a time line as to Igidi's whereabouts on the evening of July 13, 1997, but counsel did not call her to testify because of the inconsistencies in the alibi. The inconsistency was caused by evidence that Igidi stated that he was at Anderson's apartment with Anderson, his girlfriend, and Allen when he heard Allen talk about committing a robbery at the park. Further, Igidi's description of what happened during the evening that he was at Anderson's apartment was consistent with Anderson's and Warwick's testimony about the events that occurred the evening before the robbery. Therefore, Igidi has not shown that his trial counsel's decision not to call his mother as an alibi witness was deficient.

(b) Igidi next contends that trial counsel was ineffective because she failed to allow him to testify. Again, we disagree.

Igidi testified that his counsel told him that he could not testify because she did not think he would hold up against cross-examination. Igidi's counsel testified that she could not remember the conversation with Igidi, but stated: "I always put it up to my client whether they want to testify or not, but I certainly advise them as to the climate of what is going on at the trial and what the strategy is. But I would never tell a client: No, you cannot testify." "The trial court as finder of fact may believe the attorney's testimony. We find no abuse of discretion."[30]

(c) Lastly, Igidi contends that his trial counsel was ineffective because she failed to object during the following portion of the state's closing argument: "The statement said Josiah Igidi said in the beginning of the [sic] July he went to Rudolph Anderson's house, they watched movies and played video games. The next morning they took him back home." While Igidi did not say that they took him back

---

[29] (Citation omitted.) *Hall v. State*, 243 Ga. App. 804, 806 (534 SE2d 196) (2000).

[30] (Footnotes omitted.) *Lunsford v. State*, 237 Ga. App. 696, 697 (1) (515 SE2d 198) (1999).

home the next morning in his statement, there was testimony from Anderson and Warwick that they took Igidi back home the next morning.

"Attorneys are allowed considerable latitude in making closing argument, and they may draw any inference from the evidence so long as that inference is both reasonable and legitimate."[31] Therefore, Igidi's counsel's failure to object to this statement does not render her representation of Igidi deficient. Moreover, the statement did not refer to matters not in evidence. However, if we assume that the failure to object constituted error, in light of the evidence in the case against Igidi, we find the error harmless as it is not reasonably probable that but for the attorney's error, there would have been a different outcome at trial.[32]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED SEPTEMBER 18, 2001 — 

*Stuckey & Manheimer, Stephanie S. Benfield,* for appellant.
*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney,* for appellee.

---

[31] (Footnote omitted.) *Kelly v. State*, 242 Ga. App. 30, 34 (5) (528 SE2d 812) (2000).
[32] *Cartaya v. State*, 176 Ga. App. 404, 405 (336 SE2d 324) (1985).
[1] See OCGA §§ 15-6-3 (11) and 15-6-19 setting the terms of court for Cobb County.