S11A1903. SMITH v. THE STATE.
(723 SE2d 915)

MELTON, Justice.

Following a jury trial, Lester James Smith, Jr., was found guilty of, among other things, malice murder and attempting to elude a police officer in connection with the shooting death of Joel Andresen during a failed drug deal and a subsequent high-speed chase involving five police officers.[1] On appeal Smith contends, primarily, that the trial court erred by: (1) charging the jury that he was not justified

---

[1] On April 2, 2009, Smith was indicted on one count of malice murder, three counts of felony murder (with possession of a firearm by a convicted felon, aggravated assault, and violation of the Georgia Controlled Substances Act as the underlying offenses), two counts of aggravated assault (one count for assault with a deadly weapon and one count for assault with the intent to rob), two counts of possession of a firearm during the commission of a crime, one count of possession of a firearm by a convicted felon, one count of criminal attempt to commit a violation of the Georgia Controlled Substances Act, and five counts of attempting to elude a

in using force if he was attempting to commit a felony; and (2) sentencing him on five separate counts of attempting to elude a police officer. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, on June 17, 2008, Andresen and his best friend, Stephanie Newbi, walked to Big John Road for Andresen to sell marijuana to Smith, a convicted felon. Smith drove to the site of the proposed drug deal in a black Acura, and Andresen entered the passenger side of the Acura. The two men drove away and turned onto Powers Ferry Road. Newbi walked home.

Later that night, Andresen's body was found in the Powers Ferry Church of Christ parking lot with a fatal gunshot wound to the abdomen. Police were called to the scene, where they retrieved a cell phone and a green nylon bag from the ground near the victim. Police accessed the cell phone and discovered several calls to and from Smith. The next day, police went to Smith's address in search of Smith and his black Acura. After setting up surveillance near the residence, police observed Smith's black Acura leaving the neighborhood.

Police followed the Acura, and, when a marked Cobb County police car arrived and approached the Acura as well, the Acura accelerated, eventually leading five marked police cars on a high-speed chase. At varying points during the chase, three different police vehicles became the lead police cars pursuing the Acura, and the police officers in these vehicles were close enough to maintain visual contact with the vehicle. One of the police vehicles even pulled alongside the Acura for a brief time before the driver of the Acura was able to accelerate and get away from the police car. In any event, all of the marked police vehicles involved in the chase had their police lights and sirens engaged and made direct visual contact with the Acura such that the driver of the Acura had the opportunity to see them during the chase. Nevertheless, with each new police encounter, the Acura driver still refused to end the chase. Eventually, the Acura stopped after it collided with one of the pursuing patrol cars. An officer went to the stopped Acura and pulled the driver,

police officer. Following a March 22-26, 2010 jury trial, Smith was found guilty on all counts. On March 29, 2010, Smith was sentenced to life imprisonment for malice murder, and, as a recidivist, was sentenced to consecutive five-year terms for possession of a firearm by a convicted felon, the two merged counts of possession of a firearm during the commission of a crime, and each count of attempting to elude a police officer. The felony murder convictions were vacated by operation of law (*Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the remaining counts were merged with the malice murder count for sentencing purposes. Smith filed a motion for new trial on April 1, 2010, which he amended on October 6 and 7, 2010. The motion was denied on November 18, 2010. Smith's timely appeal was docketed in this Court for the September 2011 term and was orally argued on November 8, 2011.

Smith, from the window. The officer also found a handgun in the driver's seat.

After waiving his *Miranda* rights, Smith agreed to talk to police. Smith told police he contacted Andresen to buy marijuana. Smith said Andresen pulled a gun during the transaction in the Powers Ferry Church of Christ parking lot, and that the gun discharged as Smith and Andresen struggled over it.

The evidence was sufficient to enable a rational trier of fact to find Smith guilty of all the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Indeed, the evidence supported the conclusion that Smith led several police officers on a high-speed chase in an attempt to elude them,[2] and the jury was free to reject Smith's version of events relating to the shooting of Andresen and conclude from the evidence that he deliberately shot Andresen while trying to rob him during a proposed drug deal. See, e.g., *Robinson v. State*, 283 Ga. 229 (1) (657 SE2d 822) (2008).

2. Citing *Heard v. State*, 261 Ga. 262 (403 SE2d 438) (1991), Smith contends that, although the trial court gave jury charges on self-defense and accident, the trial court erred by further charging the jury that "[a] person is not justified in using force if that person is attempting to commit or is committing a felony." See OCGA § 16-3-21 (b) (2) ("A person is not justified in using force [in defense of self or others] if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony"). We disagree.

"In *Heard*, [supra,] this Court held that justification can be a defense to felony murder in some situations, notwithstanding the limitations of OCGA § 16-3-21 (b) (2)." *Williams v. State*, 274 Ga. 371, 372 (2) (552 SE2d 814) (2001). For example, a defendant "is not precluded from raising *justification merely because he is guilty of a status felony*" such as having the "status" of being a convicted felon, being a convicted felon in possession of a firearm, or simply "happen[ing] to have 1.1 ounces of marijuana in his pocket" when he was forced to defend himself in a matter that had nothing to do with the coincidence of having the drugs in his pocket. (Emphasis supplied.) *Heard*, supra, 261 Ga. at 263 (3) and n. 3. Indeed, in this regard, a "status" felony that is not inherently dangerous cannot even serve as a *basis* for felony murder in Georgia. *Ford v. State*, 262 Ga. 602,

---

[2] We note that the jury was specifically charged that each of the separate counts of attempting to elude a police officer related to each of the individual police vehicles involved in the high-speed chase. Thus, in order to find Smith guilty of attempting to elude a police officer with respect to each vehicle, the jury had to find that all of the relevant elements of OCGA § 40-6-395 had been satisfied with respect to each police vehicle involved in the chase.

603-604 (423 SE2d 255) (1992) ("[P]ossession of the firearm by [a convicted felon], alone, . . . which involve[s] no assault nor any other criminal conduct, is not a felony upon which a felony murder conviction may be obtained"). However, even in the case of the inherently dangerous felony of aggravated assault — a felony that *can* serve as a basis for felony murder — a defendant is not precluded from raising justification as a defense to a felony murder charge based on aggravated assault "if th[e] defense is authorized by the facts." *Heard*, supra, 261 Ga. at 263 (3).

In this connection, we must recognize that "*Heard* did not abolish OCGA § 16-3-21 (b) (2) altogether; rather, *Heard* made it clear that 'that section applies *where it makes sense to do so*, for example, to a burglar or robber who kills someone while fleeing.' *Heard*, supra at 263." (Emphasis supplied.) *Williams*, supra, 274 Ga. at 372 (2). Indeed, the obvious difference between a fleeing robber and one who commits a mere "status" felony is that the robber has already made an affirmative choice to engage in a dangerous and potentially violent criminal activity before a felony murder actually takes place, whereas the "status" offender was ostensibly minding his own business before any confrontation with a potential murder victim took place. Therefore, while it would "make sense" to deny a justification defense to a fleeing robber pursuant to the prohibition contained in OCGA § 16-3-21 (b) (2), it would not "make[ ] sense to do so" in the context of a mere "status" felony being committed by an offender at the time of an alleged felony murder. See *Heard*, supra, 261 Ga. at 263 (3). In this regard, even in the case of a felony murder based on aggravated assault, it would not "make sense" to apply the prohibition of OCGA § 16-3-21 (b) (2), as there are facts and circumstances in such cases that could show that an offender was not engaged in any crime at all when a confrontation leading to an alleged aggravated assault resulting in the victim's death took place. See, e.g., *State v. Green*, 289 Ga. 802, 804 (2) (716 SE2d 194) (2011) (defendant immune from prosecution for felony murder based on aggravated assault where he defended himself with a butcher knife and "trial court was authorized to find that [the defendant] acted in self-defense pursuant to OCGA § 16-3-21"). See also *Demery v. State*, 287 Ga. 805, 809 (3) (700 SE2d 373) (2010) ("[I]f [a defendant] is justified in killing under OCGA § 16-3-21, he is guilty of no crime at all").

Here, however, much like in the case of a fleeing robber, it "makes sense" to apply the prohibition of OCGA § 16-3-21 (b) (2). See *Heard*, supra. In the instant case, as opposed to simply minding his own business as a convicted felon, Smith affirmatively chose to engage in the potentially dangerous and violent criminal business of a felony drug deal before the fatal confrontation with Andresen took place.

Based on the evidence supporting Smith's participation in a felony drug transaction at the time of the fatal shooting, the trial court was authorized to instruct the jury pursuant to OCGA § 16-3-21 (b) (2) that "[a] person is not justified in using force [in defense of self or others] if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony." See *Heard*, supra; *Williams*, supra.[3]

3. Smith argues that the trial court erred by sentencing him on five separate counts of attempting to elude a police officer. We disagree.

> The question of multiple punishments (as opposed to multiple prosecutions) for the same criminal conduct is addressed under the rubric of substantive double jeopardy. Whether multiple punishment is permissible requires examination of the legislative intent underlying the criminal statute. It is for the legislature to determine to what extent certain criminal conduct has demonstrated more serious criminal interest and damaged society and to what extent it should be punished. Typically, the question is whether the same conduct may be punished under different criminal statutes. In that situation, it is appropriate to apply the . . . "required evidence" test . . . .[4] However, a different ques-

---

[3] We note that, contrary to Smith's arguments, *Williams*, supra, does not stand for the proposition that this Court has "implied that under the proper factual circumstances, a justification defense may be lawfully asserted in the course of an illegal drug transaction." Appellant's Brief at 30. In *Williams*, this Court specifically declined to reach the question whether a viable justification defense could be raised during the course of a drug deal, as, in that case, "the State did not allege, nor did it seek to prove, that [the defendant] killed [the victim] while they were dealing with drugs." Id. at 373 (2). Here, on the other hand, Smith was specifically charged with, and the State specifically proved that Smith was guilty of, engaging in a felony drug deal when he shot and killed Andresen. See OCGA § 16-13-30 (j).

[4] Because the instant case does not involve two distinct statutory provisions, the "required evidence" test does not apply. In *Drinkard v. Walker*, 281 Ga. 211, 214-215 (636 SE2d 530) (2006), this Court rejected the "actual evidence" test for determining whether a lesser crime was included in a greater crime and instead adopted the "required evidence" test articulated in *Blockburger v. United States*, 284 U. S. 299, 304 (52 SC 180, 76 LE 306) (1932). We explained in *Drinkard* that,

> [u]nder the "required evidence" test, . . . [t]he applicable rule is that where the same act or transaction constitutes a violation of *two distinct statutory provisions*, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

(Emphasis supplied.) *Drinkard*, supra. We further explained that

> [t]he "required evidence" test applies strictly within the context of determining whether multiple convictions are precluded because one of the crimes was "established by proof of the same or less than all the facts" that were required to establish the other crime under OCGA § 16-1-6 (1). There are additional statutory provisions concerning prohibitions against multiple convictions for closely related offenses that are not at issue here. These provisions include: OCGA § 16-1-6 (1) (one crime is

tion is presented here: whether a course of conduct can result in multiple violations of the same statute. The United States Supreme Court has held that this question requires a determination of the "unit of prosecution," or the precise *act or conduct* that is being criminalized under the statute. [See *United States v. Universal CIT Credit Corp.*, 344 U. S. 218, 224 (73 SC 227, 97 LE 260) (1952).] . . . Accordingly, the starting point must be the statute itself.

(Punctuation and footnotes omitted; emphasis supplied.) *State v. Marlowe*, 277 Ga. 383, 383-384 (1) (589 SE2d 69) (2003).

Pursuant to OCGA § 40-6-395:

It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle. . . . Any person violating [this provision] who, while fleeing or attempting to elude a pursuing police vehicle or police officer in an attempt to escape arrest for any offense, other than a violation of this chapter not expressly provided for in this paragraph: (i) Operates his or her vehicle in excess of 20 miles an hour above the posted speed limit; (ii) Strikes or collides with another vehicle or a pedestrian; (iii) Flees in traffic conditions which place the general public at risk of receiving serious injuries; (iv) Commits a violation of paragraph (5) of

---

included in the other where it is established by "proof of . . . a less culpable mental state"); OCGA § 16-1-6 (2) (one crime is included in the other where it differs only in that it involves a "less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability"); and OCGA § 16-1-7 (a) (2) (precluding multiple convictions where one crime differs from another "only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct"). These other statutory provisions resolve potential gaps in the *Blockburger* "required evidence" analysis which otherwise might support multiple convictions for closely related offenses where multiple convictions are unwarranted.

Id. at 216, n. 32. Because the "required evidence" test only applies "where the same act or transaction constitutes a violation of *two distinct statutory provisions*" (id.), to the extent that *Cooper v. State*, 287 Ga. 861 (4) (700 SE2d 593) (2010), can be read to imply that the test would apply to multiple counts of burglary stemming from violations of a single statutory provision (see OCGA § 16-7-1 (a)), it is hereby disapproved.

subsection (a) of Code Section 40-6-391; or (v) Leaves the state[;] shall be guilty of a felony punishable by a fine of $5,000.00 or imprisonment for not less than one year nor more than five years or both.

Id. at (a) and (b) (5) (A).

Based on the plain language of the statute, the act or conduct that is prohibited by OCGA § 40-6-395 is the "willful[ ] . . . fail[ure] or refus[al] to bring [one's] vehicle to a stop or otherwise to flee or attempt to elude *a pursuing police vehicle or police officer* when given a visual or an audible signal to bring the vehicle to a stop." (Emphasis supplied.) Thus, it is the act of fleeing from an individual police vehicle or police officer after being given a proper visual or audible signal to stop from that individual police vehicle or officer, and not just the act of fleeing itself, that forms the proper "unit of prosecution" under OCGA § 40-6-395. See *State v. Mitchell*, 719 So.2d 1245, 1248 (Fla. App. 1998) (In interpreting "attempting to elude law enforcement officer" statute that is very similar to Georgia's, Florida court concluded that "the legislature clearly intended that the commission of multiple acts of fleeing or attempting to elude a law enforcement officer be prosecuted as discrete offenses notwithstanding that all occurred during a single episode") (citation omitted). See also *Tauch v. State*, 305 Ga. App. 643 (2) (700 SE2d 645) (2010) (upholding a defendant's convictions on two counts of attempting to elude a police officer based on a single police chase involving two police vehicles). Accordingly, where, as here the evidence supported the jury's conclusion that Smith willfully led police on a dangerous high speed chase after being given clear signals by five separate police vehicles to stop, the trial court properly sentenced Smith on five separate counts of attempting to elude a police officer. See *Mitchell*, supra; *Tauch*, supra.[5]

4. Smith claims that the trial court erred by denying his motion to strike Juror No. 7 for cause. The record reveals that, although Juror No. 7 initially expressed concern that the details of the high-speed chase as reflected in the indictment made him question why Smith did not plead guilty, he ultimately answered "yes" when asked whether he could keep an open mind until after the evidence had been presented and was asked by the trial judge to make a final

---

[5] Indeed, the possibility for multiple punishment in the context of a high speed chase involving several police officers makes sense under OCGA § 40-6-395. See *Marlowe*, supra, 277 Ga. at 383 (1) ("It is for the legislature to determine to what extent certain criminal conduct has demonstrated more serious criminal interest and damaged society and to what extent it should be punished"). The potential risk to police officers and the general public is increased far more in the context of multiple officers or police vehicles being involved in a dangerous pursuit, rather than just one.

decision in the case. As there was

> [n]othing in the juror's responses [that would] compel[ ] a finding that [he] had formed an opinion of [Smith's] guilt or innocence that was so fixed and definite that [he] would be unable to set the opinion aside, or that [he] would be unable to decide the case based upon the court's charge and upon the evidence[,] . . . [i]t was not an abuse of discretion [for the trial court] to refuse to excuse the juror.

(Citation omitted.) *Corza v. State*, 273 Ga. 164, 167 (3) (539 SE2d 149) (2000).

5. Finally, Smith argues that the trial court erred by failing to instruct the jury that his prior convictions that were entered into evidence could only be used for impeachment purposes. However, the record reveals that, although the trial court initially indicated that it would give a limiting instruction at the time that the prior convictions were admitted, Smith's counsel failed to object when the trial court failed to give such an instruction at the time that the prior convictions were actually tendered into evidence. Smith has therefore waived review of this issue on appeal. See *Igidi v. State*, 251 Ga. App. 581, 585 (2) (554 SE2d 773) (2001) (A defendant "cannot rely on his earlier request for a contemporaneous limiting instruction. Rather, [the defendant is] required to request the limiting instruction at the time the evidence [is] offered. [Where] he fail[s] to do so, there [is] no error").

*Judgment affirmed. All the Justices concur.*

NAHMIAS, Justice, concurring.

Under our Constitution and legal tradition, judges are supposed to apply the law enacted by the legislature based on what a statute says, not based on whether the judges believe it "makes sense" to apply the statute to the case at hand or instead feel it would be "unfair" to do so. This Court's decision in *Heard v. State*, 261 Ga. 262 (403 SE2d 438) (1991), departed from this norm. The *Heard* majority overruled multiple precedents to hold that OCGA § 16-3-21 (b) (2), which says clearly that a criminal defendant cannot assert self-defense if he used force while "committing . . . a felony," applies to one type of felony — felony murder — only when the court thinks "it makes sense to do so" and it is not "unfair and illogical." *Heard*, 261 Ga. at 263 & n. 3.

Deciding this case under *Heard*'s misbegotten approach, it "makes sense" and seems "fair" enough to me, and to the other judges on this Court, that OCGA § 16-3-21 (b) (2) precluded Smith from claiming, or having the jury instructed, that the felony murder

he committed in the course of committing a felony drug deal could be justified by self-defense. I therefore concur with Division 2 of the majority opinion (as well as the rest of the opinion).[6] Given the resolution of Smith's *Heard* argument against him, the Court need not decide whether *Heard* is good law, and the State has not asked us to reconsider that precedent in this case. However, before *Heard* becomes any more entrenched in the Georgia Reports, I think it is important to point out its dubious underpinnings.

OCGA § 16-3-21 (a) establishes one of this State's justification defenses to criminal charges, allowing the use of force, sometimes even deadly force, in the defense of oneself and others. However, subsection (b) (2) of the statute then says, in plain English, that "[a] person is not justified in using force under the circumstances specified in subsection (a) . . . if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony." Reading this law, one would think that a defendant who was "committing . . . a felony" when he used deadly force could not claim, or receive a jury instruction, on self-defense. And because the statute refers to "a felony," excluding no type or class of felony, if in committing a felony the defendant used force to cause the death of another person, thereby committing a felony murder, see OCGA § 16-5-1 (c), the law would not allow him to claim self-defense.

In accordance with this plain statutory language, this Court repeatedly held before *Heard* that "[s]elf-defense is not a defense to felony murder." *Ely v. State*, 244 Ga. 432, 432 (260 SE2d 345) (1979). Accord *Hall v. State*, 259 Ga. 243, 244 (378 SE2d 860) (1989) ("The trial court's instructions on self-defense were a correct and sufficient statement of Georgia law, which did not prevent the jury from considering the appellant's claims of self-defense as to all of the charges against him except felony murder, to which offense self-defense is no defense."); *Smith v. State*, 235 Ga. 327, 329 (219 SE2d 440) (1975) (calling defense counsel's argument that the appellant had a right to use his gun in self-defense "a gross misstatement of the law as applied to the evidence in the case," and explaining, "[t]he appellant was attempting to commit a felony at the time the victim's companion pulled out his knife. Under these circumstances the appellant was not legally justified in using a weapon to defend himself." (citing the predecessor to OCGA § 16-3-21 (b) (2)).

---

[6] Indeed, I think Smith's *Heard* claim is easier to resolve than the majority opinion suggests. Smith does not only need to show error under *Heard*, he must show "plain error," because he did not object to the jury charge at trial based on *Heard*'s interpretation of OCGA § 16-3-21 (b) (2), instead complaining only that the jury charge was unconstitutional, an issue he does not raise on appeal. See OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 32-33 (718 SE2d 232) (2011).

The majority opinion in *Heard* — Justices Weltner and Smith dissented in relevant part — started by quoting the language of OCGA § 16-3-21 (b) (2). See 261 Ga. at 262. But the majority then claimed that the legislature did not mean what it had said — that "a felony" means "a felony" — instead asserting that the General Assembly "did not intend that section to preclude the defense of justification in *all* felony murder cases." Id. (emphasis in original).

The *Heard* majority did not base this assertion on any analysis of the statutory language or other canons of statutory construction, such as a need to avoid a constitutional violation. It simply held that statute would no longer apply "where there is sufficient evidence of a confrontation between the defendant and the victim, or other circumstances which ordinarily would support a charge on justification," as may exist where the predicate felony is aggravated assault. Id. at 262-263. Henceforth, OCGA § 16-3-21 (b) (2) would apply only where judges decided that "it makes sense to do so, for example, to a burglar or robber who kills someone while fleeing." Id. at 263. The majority found it particularly "unfair and illogical to deny a defendant the defense of justification against a felony murder charge merely because of his status as a convicted felon in possession of a firearm," or, in what it deemed "a more dramatic, though analogous example," to deny a defendant "a charge on self-defense if he happened to have 1.1 ounces of marijuana in his pocket when he killed someone while trying to defend himself." Id. at 263, n. 3. Our contrary precedent was overruled. See id. at 263 (specifically overruling *Hall* and *Ely*).

The *Heard* majority's view of when self-defense may be raised against a charge of felony murder is reasonable, perhaps even wise. Indeed, if I were a legislator drafting or voting on a self-defense statute, I might favor one that allows the defense to be raised in felony murder cases when the underlying felony is passive and incidental,[7] like the mere possession of illegal drugs, but prohibits a self-defense claim where the predicate felony often involves danger and violence, like felony drug dealing.

Of course, other policymakers might decide that felony murder liability should be imposed very broadly to deter and punish felonious conduct that proximately causes death, and thus to prohibit claims of self-defense even when, for example, a convicted felon

---

[7] I use the term "passive" felony rather than "status" felony, a term that has been misused in *Heard* and other felony murder cases. See *Shivers v. State*, 286 Ga. 422, 427-428 (688 SE2d 622) (2010) (Nahmias, J., concurring specially). True "status offenses" (for example, the crime of "being a felon") are unconstitutional because they lack an "actus reas," whereas crimes like possession of a firearm or illegal drugs require the offender to act to obtain and possess the prohibited item – acts that may be criminally punished. See id.

chooses to arm himself and that inherently dangerous conduct leads to someone being killed. There would be nothing unconstitutional about that policy decision, since this Court has long held "the overbreadth of the felony-murder statute to be a policy, rather than a Constitutional, problem." *McKenzie v. State*, 248 Ga. 294, 295 (282 SE2d 95) (1981), overruled on other grounds, *O'Kelley v. State*, 284 Ga. 758, 768 (670 SE2d 388) (2008). See also *Shivers*, 286 Ga. at 428 (Nahmias, J., concurring specially) (discussing "the General Assembly's determination that it is inherently dangerous for a convicted felon to possess a gun" — a crime that is punished by a prison term of one to five years even if it does not injure anyone).

But whether the policy established by the *Heard* majority is good or bad is not the point, because it is not the policy established by the body that is constitutionally entitled to establish the laws of Georgia. See Ga. Const. of 1983, Art. III, Sec. VI, Par. I ("The General Assembly shall have the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state."). If such laws are not unconstitutional, the obligation of this Court is to apply them, whether we like them or not. As Chief Justice Russell put it, in determining constitutional and other questions, "the courts are not permitted to concern themselves with the wisdom of an act, or to apply or obtrude the personal views of the judges as to such matters." *Shadrick v. Bledsoe*, 186 Ga. 345, 350 (198 SE 535) (1938). Although *Heard* did not hold OCGA § 16-3-21 (b) (2) unconstitutional in any way, we have recognized that the decision "abolish[ed]" the statute to some extent. *Williams v. State*, 274 Ga. 371, 372 (552 SE2d 814) (2001) (explaining that "*Heard* did not abolish OCGA § 16-3-21 (b) (2) altogether"). That is something this Court may not do.

*Heard* comes from an era in which this Court cut back on the scope of the felony murder statute in several ways inconsistent with its text, history, and precedent. See, e.g., *Ford v. State*, 262 Ga. 602, 603 (423 SE2d 255) (1992) (acknowledging that OCGA § 16-5-1 (c) "does not specify which felonies may predicate a felony murder conviction," but then holding that the statute applies only to a felony "that is dangerous per se, or 'which by the attendant circumstances, create(s) a foreseeable risk of death,' " and also deciding that the felony of possession of a firearm by a convicted felon is not dangerous per se (citation omitted)); *State v. Crane*, 247 Ga. 779, 779 (279 SE2d 695) (1981) (holding that the word "causes" in the felony murder statute requires not proximate causation, but that the victim's death be "caused directly" by one of the parties to the underlying felony), overruled by *State v. Jackson*, 287 Ga. 646, 660 (697 SE2d 757) (2010). See also *Shivers*, 286 Ga. at 425-428 (Nahmias, J., concurring

specially) (discussing problems with *Ford*'s textual and historical analysis and its view of the offense of possession of a firearm by a convicted felon). Unlike *Ford*, the holding in *Heard* has not been deeply embedded in our law; it has been cited infrequently and has never resulted in a conviction being reversed on appeal. Even in *Heard* itself, after holding that the trial court had erred under (or, more precisely, in not predicting) this Court's novel interpretation of OCGA § 16-3-21 (b) (2), the majority held that the error was harmless because Heard's felony murder conviction had been merged into his conviction for malice murder. See 261 Ga. at 263.

Finally, it should be recognized that *Heard*'s disregard for the language of OCGA § 16-3-21 (b) (3) is not needed to avoid the applications of the statute that the *Heard* majority felt would be most "unfair." Under the felony murder statute, the predicate felony must be the proximate cause of the victim's death. See *Jackson*, 287 Ga. at 660. If a defendant merely "happened to have 1.1 ounces of marijuana in his pocket when he killed someone while trying to defend himself," *Heard*, 261 Ga. at 263, n. 3, then the drug possession felony would have no causal connection to the death and could not be the basis of a felony murder conviction, without respect to any claim of self-defense. As the majority recognizes, see Maj. Op. at 771, *Ford* holds that "possession of [a] firearm by [a convicted felon], alone, under . . . circumstances which involve no assault nor any other criminal conduct, is not a felony upon which a felony murder conviction may be obtained." 262 Ga. at 603-604. Likewise, because self-defense may be a defense to a felony charge of aggravated assault, and where that defense is valid it means the accused was "not engaged in any crime at all," Maj. Op. at 771 (citing cases), a felony murder conviction could not be based on such a non-existent predicate felony. See *Heard*, 261 Ga. at 264, n. 4 (Weltner, J., dissenting in part). There is no need to warp the self-defense statute to reach the same result.

It took almost 30 years for this Court to overrule our patently incorrect decision in *Crane*. For the reasons discussed above, if we are asked to overrule *Heard*, the request would require serious consideration.

I am authorized to state that Presiding Justice Carley and Justice Hines join in this concurrence.

DECIDED MARCH 23, 2012.

*Brian Steel*, for appellant.
*Patrick H. Head*, District Attorney, *Gregory L. Epstein*, *John R. Edwards*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Brit-*

*tany N. Jones, Assistant Attorney General,* for appellee.